# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHA M. CARTER, | CASE NO. 1:05-cv-01057 LJO DLB PC |
| Plaintiff, | ORDER GRANTING MOTION TO WITHDRAW PORTION OF SUMMARY JUDGMENT |
| v. | |
| | (Doc. 50) |
| S. BUTLER, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED AND THIS MATTER BE SET FOR TRIAL |
| Defendants. | |
| | (Doc. 42) |
| | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW BE DENIED |
| | (Doc. 48) |

I.  **Defendants' Motion for Summary Judgment**

   A.   **Procedural History**

   Plaintiff Desha M. Carter ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's amended complaint, filed June 23, 2006, against defendant Butler for use of excessive force in violation of the Eighth Amendment of the United States Constitution, and defendant Rousseau for violation of due process ("Defendants"). (Docs. 11, 29.)   On March 25, 2009, Defendants filed a motion for summary judgment.  (Doc. 42.)  Plaintiff filed an opposition on April 16, 2009.  (Doc. 45.)

1

**B.     Motion to Withdraw Portion of Argument**

On June 15, 2009, Defendants filed a request to withdraw Parts I-B and II-A of their motion for summary judgment. Defense counsel states that she recently learned that the bases for those portions of the motion are erroneous. Plaintiff filed an opposition on June 26, 2009. (Docs. 50, 51.)

The request is granted. The Court now considers the remainder of Defendants' motion for summary judgment.

**C.     Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**D.     Undisputed Facts**[1]

1. Plaintiff is a prisoner of the State of California.

2. On January 13, 2004, defendant Butler was a correctional officer employed at Corcoran State Prison.

3. On January 13, 2004, defendant Butler was accompanying a nurse who was distributing medication to inmates in Building 4A at Corcoran State Prison.

4. On January 13, 2004, Plaintiff, Desha Carter, was an inmate housed in Building 4A, cell Number 1.

5. At approximately 4:30 p.m., defendant Butler and the nurse approached Plaintiff's cell and provided him with a bottle of medication.

6. Plaintiff did not return the medication bottle, so defendant Butler issued him a direct order to return the bottle.

7. As a result of the January 13, 2004 incident, Plaintiff was charged with a CDC Form 115, Serious Rules Violation for Battery on a Peace Officer.

8. The Rules Violation Report charged Plaintiff with refusing direct orders to return the medication bottle, and grabbing Officer Butler's wrist, causing Butler to spray a two-second burst of pepper spray at Plaintiff.

9. Following an investigation, the Hearing Officer, defendant Rousseau, found Plaintiff guilty of battery on a peace officer.

10. Plaintiff contends that he never touched Butler's wrist during the January 13, 2004 incident.

11. Plaintiff contends that Butler used pepper spray on him on January 13, 2004, merely because Plaintiff made a disrespectful statement about Butler's mother.

12. Plaintiff was served with a copy of the written charges against him on January 20,

---

[1] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). Although Plaintiff has prepared a statement of disputed and undisputed facts, he has not cited to any document to support those facts that he denies. (Doc. 46, pp. 26-27.)

4

2004, at 6:00 p.m.

13. On January 20, 2004, Plaintiff was assigned an investigative employee to assist him in the hearing, Officer M.L. King.

14. Plaintiff indicated that he had no objections to Officer King serving as the Investigative Employee.

15. Plaintiff provided the names of six staff members and one inmate to Officer King, along with a series of questions for each of the staff members.

16. Officer King took written statements from the witnesses and recorded the responses of each of the witnesses.

17. Officer King provided this written record to Plaintiff before the hearing. Plaintiff requested all the witnesses be present at the hearing.

18. Institutional regulations provide the hearing officer with discretion to deny an inmate's request for witnesses, except the reporting officer.

### E. Plaintiff's Claims

In his amended complaint, Plaintiff states that on January 13, 2004, he was called to his cell door by Medical Technical Assistant Suarez to receive his medication and medical supplies. Plaintiff was handed a facial solution bottle. Plaintiff was informed that he needed to return the facial solution bottle, and Plaintiff agreed to do so. Plaintiff alleges that defendant Butler, who was present, became impatient and belligerent. Plaintiff states that he and defendant Butler engaged in a verbal exchange, when defendant Butler abruptly left the section with MTA Suarez. Officer Ibarra came to Plaintiff's cell to ask Plaintiff what had happened. While Plaintiff was speaking to Officer Ibarra, defendant Butler then sprinted back to the section while shaking a can of pepper spray, opened Plaintiff's tray/food port, and sprayed Plaintiff for 45-60 seconds without provocation or warning. Plaintiff states that he was locked inside his cell and posed no threat to defendant Butler.

Plaintiff was subsequently charged with a Rules Violation for assault on staff. Plaintiff states that on February 16, 2004, Plaintiff informed defendant Rousseau that he wished to have a RVR hearing. Plaintiff alleges that he was found guilty in a CDC disciplinary hearing and assessed a loss of television privileges for ninety days, loss of yard for ten days, and assessed an eighteen month

aggravated SHU term. Later in his amended complaint, Plaintiff alleges that he was found guilty without a hearing. Plaintiff alleges that defendant Rousseau prepared a false report stating that Plaintiff did not wish to have witnesses present and that Plaintiff had asked six questions to defendant Butler who was present during the hearing.

### F.    Plaintiff's Excessive Force Claim

#### i.    Whether Defendant Butler's Use of Force was Malicious, Sadistic or for the Very Purpose of Causing Harm

Defendants argue that defendant Butler's use of force was minimal, was a good faith effort to restore discipline, and caused Plaintiff no injury. In support of their motion for summary judgment, Defendants submit evidence that on January 13, 2004, defendant Butler and the nurse approached Plaintiff's cell and provided Plaintiff with a bottle of medication.  (Undisputed Fact (U.F.) 5.) Plaintiff did not return the medication bottle, so defendant Butler issued him a direct order to return the bottle. (U.F. 6.) Defendants contend that Plaintiff appeared as though he would return the bottle but when defendant Butler extended his hand to retrieve the bottle, Plaintiff grabbed defendant Butler's left wrist and attempted to pull him into the food port. (Doc. 42-2, Exh. B, Butler Suppl., p. 1 of 2.) Defendants contend that defendant Butler pulled back with his arm and sprayed a two second burst of pepper-spray at Plaintiff's upper torso area.  (Id. pp. 1, 2 of 2.)  Defendants contend that Plaintiff then let go to defendant Butler's wrist and defendant Butler closed the food port.  (Id. p. 2 of 2.)   Defendants contend that the nurse offered Plaintiff medical treatment and decontamination following the pepper spray exposure, but Plaintiff declined to be decontaminated or treated. (Id. p. 2 of 2; Doc. 42-2, Suarez Suppl., p. 1 of 1.) Defendants contend that the nurse provided Plaintiff with instructions on how to decontaminate himself from the pepper spray, and checked on Plaintiff every fifteen minutes during the next hour, before medically clearing him. (Doc. 42-2, Suarez Suppl., p. 1 of 1.)

In opposition, Plaintiff submits evidence that as he was using the bottle of facial solution, defendant Butler became belligerent and told Plaintiff to hurry up. (Doc. 46, Carter Decl., p. 1 of 4.) Plaintiff submits evidence that defendant Butler exited the section, and that Officer Ibarra came to Plaintiff's cell and asked Plaintiff what had happened. (Id. at p. 2 of 4; Doc 46, Exh. E, Cains Decl. p. 1 of 1.)  Plaintiff states that while he was explaining the situation to Officer Ibarra,

6

defendant Butler returned, pushed Officer Ibarra aside, opened the food port and proceeded to pepper-spray Plaintiff without reason. (Doc. 46, Carter Decl., p. 2 of 4; Doc 46, Exh. E, Cains Decl. p.1 of 1.) Plaintiff states that at no time did he grab or attempt to grab defendant Butler's wrist. (Doc. 46, Carter Decl., p. 2 of 4.) Plaintiff states that he was not provided medical assistance and that he suffered from breathing complications. (Id.) Plaintiff states that he was allowed to decontaminate two hours later. (Id.; Doc 46, Exh. E, Cains Decl., p. 1of 1.)

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id. "'[S]ummary judgment or judgment as a matter of law in excessive force cases should be

7

granted sparingly,'" Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

In this instance, the parties agree on very little. The parties have both submitted evidence concerning the circumstances under which defendant Butler applied pepper spray to Plaintiff. The evidence of Plaintiff, as the opposing party, is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of Plaintiff. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Plaintiff's declaration and deposition testimony, as well as his cellmate's declaration, create a triable issue of fact. Plaintiff's evidence shows that following an argument between defendant Butler and Plaintiff, defendant Butler left the section and then returned in order to pepper spray Plaintiff. Plaintiff's evidence shows that he was not grabbing nor attempting to grab defendant Butler's wrist so as to necessitate the use of pepper spray. The court cannot choose to believe Defendants' version of events over Plaintiff's version of events on summary judgment. It is for the trier of fact to weigh the evidence and make credibility determinations. Accordingly, because there are material issues of fact in dispute in this matter, Defendants are not entitled to judgment as a matter of law.

### ii.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity because defendant Butler applied the force used in a good faith effort to maintain and restore discipline, and was required to act quickly to regain control in order to prevent injury to himself or to Plaintiff. Defendants contend that defendant Butler reasonably believed that a short burst of pepper spray was an appropriate and lawful response.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Thus, if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances. Millender v. County of Los Angeles, 564 F.3d 1143, 1148 (9th Cir. 2009). "Qualified immunity balances two important interests - the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 129 S.Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); McSherry v. City of Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); McSherry, 560 F.3d at 1130.

In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Under the first step of the inquiry, Plaintiff has presented evidence that defendant Butler and Plaintiff engaged in a verbal altercation when defendant Butler left and then returned carrying a can of pepper spray. Plaintiff has presented evidence that defendant Butler then approached Plaintiff's cell, opened the food port and pepper sprayed Plaintiff for approximately one minute. Plaintiff has presented evidence that he was not attempting to grab or grabbing defendant Butler. Taken in a light most favorable to Plaintiff, these facts are sufficient to show that defendant Butler violated Plaintiff's rights under the Eighth Amendment.

The second step of the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id., at 202 (citation omitted). At the time of the incident on January 13, 2004, the law was sufficiently clear that a reasonable official would

understand that what he is doing violates that right. With respect to excessive force claims, the "inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, whether or not significant injury is evidence. Id. at 9. No reasonable officer would have believed that engaging in a verbal altercation with a prisoner, and then subsequently returning to spray the prisoner with pepper spray for approximately one minute was force "applied in a good-faith effort to maintain or restore discipline . . . ." Id. at 7. Defendant Butler is not entitled to qualified immunity.

**G.   Due Process Claim**

  **i.   Whether Plaintiff was afforded the minimum procedural requirements due**

Plaintiff was served with a copy of the written charges against him on January 20, 2004, at 6:00 p.m. (U.F. 12.) On January 20, 2004, Plaintiff was assigned an investigative employee to assist him in the hearing, Officer M.L. King. (U.F. 13.) Plaintiff indicated that he had no objections to Officer King serving as the Investigative Employee. (U.F. 14.) Plaintiff provided the names of six staff members and one inmate to Officer King, along with a series of questions for each of the staff members.(U.F. 15.) Officer King took written statements from the witnesses and recorded the responses of each of the witnesses. (U.F. 16.) Officer King provided this written record to Plaintiff before the hearing. (U.F. 17.)

Defendants contend that the hearing took place February 16, 2004. (Doc. 42-2, Exh. C, CDC Form 115.) Defendants contend that defendant Butler was the reporting officer for the Disciplinary Rules Violation Report, and that Plaintiff concedes that defendant Butler was present. (Doc 42-2, Exh. D, pp. 59-60.) Defendants contend that Plaintiff pled not guilty. (Doc. 42-2, Exh. C, CDC Form 115.) Plaintiff requested all the witnesses be present. (U.F. 17.) Institutional regulations provide the hearing officer with discretion to deny an inmate's request for witnesses, except the reporting officer. (U.F. 18.) Defendants contend that Plaintiff received all the procedural protections he was due at his disciplinary hearing and therefore defendant Rousseau is entitled to summary judgment.

1          In opposition, Plaintiff argues that he never received a hearing. Plaintiff contends that on
2   February 16, 2004, defendants Butler and Rousseau approached his cell. (Doc. 46, Carter Decl., p.
3   3 of 4; Doc. 46, Exh. I, Johnson Decl., p.1 of 2.) Plaintiff states that defendant Rousseau asked
4   Plaintiff if he wanted a Rule 115 RVR hearing. (Doc. 46, Carter Decl., p. 3 of 4.) Plaintiff agreed,
5   but asked for his witnesses at the hearing. (Id.) Plaintiff was informed that the hearing would take
6   place at Plaintiff's cell door. (Id.) Plaintiff contends that he provided defendant Rousseau with a
7   list of questions for defendant Butler, which defendant Rousseau took. (Id.) Plaintiff states that he
8   was told by defendant Rousseau that he would return them to Plaintiff before the hearing took place.
9   (Doc. 42-2, Exh. D, Plaintiff's Depo., p.60:9-13.) Plaintiff states that the defendants then exited the
10  section together and never returned to grant Plaintiff an actual hearing. (Doc. 46, Carter Decl., p.4
11  of 4.) Plaintiff contends that defendant Rousseau falsified the Rule 115 RVR report by lying and
12  stating that Plaintiff attended the hearing, that Plaintiff made a statement, posed six questions to
13  defendant Butler, and stating that Plaintiff's request for witnesses was denied. (Id.) Plaintiff states
14  that he was never given a hearing, and never made a plea or statement. (Id.)

15          The Due Process Clause protects against the deprivation of liberty without due process of
16  law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). Prisoners may claim
17  protections of the Due Process Clause; however their rights under the Due Process Clause may be
18  subject to restrictions imposed by the nature of the regime to which they have been lawfully
19  committed. Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974). "Prison disciplinary proceedings are
20  not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings
21  does not apply." Wolff, 418 U.S. at 556. With respect to prison disciplinary proceedings, the
22  minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least
23  24 hours between the time the prisoner receives written notice and the time of the hearing, so that
24  the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they
25  rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his
26  defense, when permitting him to do so would not be unduly hazardous to institutional safety or
27  correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues
28  presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are

1   met, due process has been satisfied.  <u>Walker v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994)
2   (abrogated in part on other grounds).

3   　　　　The parties agree that defendants Rousseau and Butler approached Plaintiff's cell door on
4   February 16, 2004.  The parties agree that Plaintiff was informed that the Rule 115 hearing would
5   take place at his cell door.  However, Plaintiff submits evidence that when he presented with
6   defendant Rousseau with a copy of the questions he intended to ask defendant Butler, defendant
7   Rousseau took the papers and indicated that he would return them to Plaintiff once he had made a
8   copy, and before the hearing took place.  Plaintiff submits evidence that defendants left and never
9   returned.  Forty-five minutes later, Correctional Officer Rojas came to Plaintiff's cell and unplugged
10  his television on defendant Rousseau's instructions, purportedly as part of the punishment imposed.

11  　　　　Plaintiff also submits as evidence an incomplete copy of a Rules Violation Report. (Doc. 45,
12  Exh. J.) Defendant Rousseau is identified as the writer of the report.  The report appears to be about
13  the January 13, 2004 incident at issue, but bears a different log number than the Rules Violation
14  Report submitted by Defendants.  The report indicates that the hearing began on February 16, 2004
15  and was continued to February 20, 2004.  (<u>Id</u>.)   The report indicates that on February 20, 2004,
16  Plaintiff pled not guilty, made a statement, requested and was granted witnesses, and asked at least
17  six questions to defendant Butler.

18  　　　　Defendants have not filed a reply and have not explained whether the hearing was in fact
19  continued to February 20, 2004, the reason for such a continuation, and whether the hearing on
20  February 20, 2004 satisfied the minimal procedural requirements set forth in <u>Wolff</u>.  Plaintiff
21  declares under penalty of perjury that he was never given a hearing and that the report is a complete
22  fabrication by defendant Rousseau. (Doc. 46, Carter Decl., p. 3 of 4.)  For the purposes of summary
23  judgment and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has raised a triable
24  issue of fact as to when he was afforded a disciplinary hearing, and whether the hearing satisfied the
25  minimal procedural requirements.  Defendant Rousseau is not entitled to summary judgment.

26  　　　　**ii.     Qualified Immunity**

27  　　　Defendants argue that defendant Rousseau is entitled to qualified immunity because he
28  reasonably believed that his conduct during the hearing was lawful.  Defendant Rousseau argues that

he reasonably believed that it was appropriate and fair to deny Plaintiff's request for live witness testimony because he had written statements from the witnesses, as well as their responses to Plaintiff's questions.[2] Further, Defendant Rousseau argues that he reasonably relied on a regulation that provided a hearing officer with discretion to deny additional witnesses. Cal. Code Regs., tit. 15 §3315(e)(1)(B).

Even viewing the evidence in favor of defendants, which the Court is not expected to do when determining whether Defendants are entitled to qualified immunity, the Court does not find their argument persuasive. Assuming, as Defendants argue, that a hearing was conducted on February 16, 2004 with both Plaintiff and defendant Butler present, and also assuming that defendant Rousseau relied on witness statements rather than live witness testimony, the law was sufficiently clear in 2004 that "[a] blanket denial of permission for an inmate to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure." Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003) (quoting Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1995)), and a correctional officer violates a prisoner's due process where the officer offers no reason for refusing to allow live witness testimony on the plaintiff's behalf. Id at 1080; see also Bartholomew v. Watson, 665 F.2d.915, 917-18 (9th Cir. 1982). Further, Cal. Code Regs., tit. 15 §3315(e) imbues a prisoner with a positive right to call witnesses.[3] Serrano, 345 F 3d at 1079-80. While a hearing

---

[2] Adding further confusion is the partial Rules Violation Report submitted by Plaintiff and purportedly authored by defendant Rousseau, stating that Plaintiff's requests for witnesses were granted. As previously discussed, Plaintiff contends that the entire report is a fabrication. Defendants have not explained this discrepancy.

[3] Cal. Code Regs., tit. 15 §3315(e) provides:
(e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.
(1) Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons:
    (A) The appearance would endanger the witness.
    (B) The official determines that the witness has no relevant or additional information.
    (C) The witness is unavailable.
(2) If an inmate's request for a witness is denied, the reasons shall be documented on the CDC Form 115.
(3) Whether or not the inmate requests a witness, witnesses may be called if the official conducting the hearing determines the witnesses may have information necessary to the finding of fact.
(4) The reporting employee shall attend the disciplinary hearing or be available for questioning via speakerphone if requested by the inmate.
(5) Under the direction of the official conducting the disciplinary hearing, the inmate has the right to ask questions of all witnesses called. The SHO will screen all questions to ensure they are relevant to the violation charged.

officer may deny a prisoner's request for witnesses for the reasons articulated under the regulation, the hearing officer must also document the reasons for the denial if the regulations so require. Id. Defendants have not shown that a reasonable officer would believe that reliance on written witness statements justifies a blanket denial of live witness testimony without any explanation documented. Therefore, the Court finds that defendant Rousseau is not entitled to qualified immunity.

**II.  Plaintiff's Motion for Judgment as a Matter of Law**

On June 9, 2009, Plaintiff filed a motion seeking judgment on the pleadings and/or judgment as a matter of law. (Doc. 48.) Plaintiff states that he is entitled to judgment because Defendants failed to file a reply to his opposition to the summary judgment motion.

Filing a reply is optional. Defendants' election not to do so does not entitle Plaintiff to judgment as a matter of law and/or judgment on the pleadings. There is no basis to grant Plaintiff judgment as a matter of law.

**III.  Conclusion, Order, and Recommendations**

Defendants' motion to withdraw portions of their motion for summary judgment is GRANTED. The Court RECOMMENDS that the remainder of Defendants' motion for summary judgment be DENIED, and that this action proceed to trial on Plaintiff's claim of excessive force against defendant Butler in violation of the Eighth Amendment, and Plaintiff's claim for violation of due process against defendant Rousseau.

The Court further RECOMMENDS that Plaintiff's motion for judgment on the pleadings and/or judgment as a matter of law be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written

---

(6) Nothing in this section shall preclude making a witness available by speaker phone for a disciplinary hearing.

objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**July 14, 2009**__              _____**/s/ Dennis L. Beck**_____
                                                                     UNITED STATES MAGISTRATE JUDGE